UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THOMAS P. LEAHY, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:10CV00524 AGF |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Thomas P. Leahy, Jr., was not disabled and, thus, not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, the decision of the Commissioner shall be affirmed.

Plaintiff, who was born on September 26, 1948, filed his applications for benefits on December 19, 2005, at the age of 57, alleging a disability onset date of December 9, 2005, due to degenerative disc disease of the spine, arthritis, and pain residual of bilateral knee surgery. After Plaintiff's application was denied at the initial administrative level, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and such a hearing was held on April 16, 2008. Plaintiff and a vocational expert ("VE") testified at the hearing. By decision dated May 1, 2008, the ALJ found that Plaintiff had the residual

functional capacity ("RFC") to perform his past work as a business manager for a union,[1] and was thus not disabled. Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on January 28, 2010. Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record. Specifically, Plaintiff argues that the ALJ did not reconcile a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT") regarding the activities required by Plaintiff's past relevant work. Plaintiff also argues that the ALJ improperly discredited Plaintiff's subjective complaints, and did not consider the combination of Plaintiff's impairments, in determining Plaintiff's RFC. Plaintiff asks that the ALJ's decision be reversed and either amended to a fully favorable decision or remanded for further consideration.

## BACKGROUND

**Work History and Application Forms**

On his Work History Report submitted with his application for benefits, Plaintiff wrote that he was a business manager for an insulation installers union from June 1998 to December 2005. Prior to his job with the union, Plaintiff worked as an insulation installer for at least 12 years. He described his tasks as business manager as follows:

---

[1] This job is described in the record variably as business manager, business agent, and business representative.

"Worked on union contracts - sending members to contractors for work. Inspected work on job sites, took care of grievances on job sites. Pre-job meetings." He indicated that this work required him to walk two hours a day, stand two hours a day, sit five hours a day, and lift less than 20 pounds. On the form he did not indicate any time spent on other exertional activities, such as climbing or stooping, as he did in describing his job as an actual installer. (Tr. 122-23.)

The record indicates that as business manager, Plaintiff earned approximately $60,000 to $85,000 annually, while as an installer, he earned approximately $30,000 to $45,000 annually. (Tr. 97.)

**Medical Record**

Diagnostic tests, including x-rays and MRIs, from December 2004 through January 6, 2006, showed multiple prior ankle injuries, and likely acute or chronic plantar fasciitis; multilevel degenerative disc disease throughout the lower thoracic and entire lumbar spine, worse from L3-4 through L5-S1; grade 1 anterolisthesis of L3 on L4; facet osteoarthritis at L2-S1; and menisci tears and other problems in Plaintiff's knees. On January 11, 2006, Plaintiff underwent arthroscopic surgery of his right knee, and on March 27, 2006, total left knee arthroplasty. (Tr. 263, 351).

Thereafter, through 2007, Plaintiff underwent multiple lumbar transforaminal epidural steroid injections at left L5, left L3, left L5-S1, and right and left S1. Radiography on October 3, 2006, revealed severe degenerative disc disease at C4-C7; mild degenerative disc disease at C3-C4; flowing osteophytes in anterior longitudinal

ligament between C4 and C7; and osteoarthritis of apophyseal joints. (Tr. 374.)

On February 7, 2007, orthopedic surgeon Robert Shively, M.D., who had been treating Plaintiff since at least 2004, completed a Physician's Assessment in connection with Plaintiff's application for disability benefits. Dr. Shively wrote that Plaintiff could do no prolonged standing, walking, lifting greater than 25 pounds, squatting, or ladder climbing, and opined that Plaintiff was not capable of light work. (Tr. 427.)

An x-ray of the left shoulder on March 1, 2007, revealed osteoarthritis and degenerative changes which were possibly posttraumatic, and Plaintiff was administered a steroid injection in that shoulder, on March 6, 2007. (Tr. 521, 565.)

On March 21, 2007, Adam Labore, M.D., another treating orthopedic surgeon, completed a Physician's Assessment in connection with Plaintiff's claim for disability benefits. Dr. Labore diagnosed back pain radiating into left lower extremity. He opined that Plaintiff's subjective complaints were consistent with objective findings, and that Plaintiff could likely "tolerate intermittent carrying of 10 pounds or less, in setting of as-needed sit/stand position changes," but that he would be unable to perform "light work" as that term was defined by the Commissioner's regulations. (Tr. 509.)

Diagnostic tests in March and April 2007 revealed mild to moderate narrowing of right medial and lateral femoral tibial joint spaces; moderate central canal stenosis and severe neural foraminal stenosis at multiple levels; and partial left rotator cuff tear and a tiny partial tear of a tendon with associated calcific tendinitis. (Tr. 563, 514-15, 748.) Plaintiff underwent an anti-inflamatory injection into each thumb carpometacarpal joint

4

on April 18, 2007, steroid injections at C3-4 to treat cervical spondylosis on May 23 and June 13, 2007, and anti-inflammatory injection into the left thumb carpometacarpal joint on October 22, 2007 (Tr. 524-26, 588-91.)

On October 19, 2007, pain management specialist Bakul Dave, M.D., wrote that Plaintiff had a history of cervical spondylosis and severe foraminal stenosis at C3-4, for which a cervical facet joint block and C3-4 radio frequency ablation helped him only for a short period of time. Currently, Plaintiff was taking Hydrocodone and Neurontin for his pain and still had limited range of motion. Dr. Dave suggested that Plaintiff see Brett Taylor, M.D., for possible surgical alternatives. (Tr. 599.)

On November 13, 2007, Plaintiff saw Dr. Taylor, who reported: "I have explained to this individual that he has a very severe and all encompassing degenerative pathology throughout his cervical and lumbar spine based on the information we have today to review. He is scheduled to undergo hand surgery. We feel it is prudent that he recover from his hand surgery and that his hand surgeon approve him to be cleared for a spinal procedure." (Tr. 538.) On November 14, 2007, Plaintiff underwent right thumb arthroscopic partial trapeziectomy with partial flexor carpi radialis interposition. (Tr. 718.) On December 19, 2007, Plaintiff underwent S1 transforaminal epidural steroid injection to treat lumbosacral radiculopathy with degenerative disc disease. (Tr. 717.)

An MRI dated February 4, 2008 revealed central canal stenosis at L3-4 with right lateral foraminal disc protrusion; canal narrowing at L2-3 and L4-5 with associated central disc protrusion at L4-5; spondylosis with central disc herniation at L5-S1; disc

5

bulging from T12 through L2 with a small central disc protrusion at T12-L1; degenerative forward listhesis of L3 on L4; and multilevel foraminal stenosis. (Tr. 604-05.)

Diagnostic tests in March and April 2008 showed interval progression severe carpometacarpal osteoarthritis of the right thumb; mild right hip osteoarthritis and changes of early osteoarthritis of left hip; severe degenerative disc disease at L3-L4 and L4-L5; and extensive degenerative changes which contributed to central canal stenosis from L2-L3 through L4-L5 and multilevel neural foraminal narrowing, worse as compared to 2006 tests. (Tr. 708, 706, 766.)

On April 11, 2008, Adam Labore, M.D., was asked whether it was "still" his opinion that Plaintiff's condition would prevent him from engaging in sustained full-time sedentary work as he had stated on March 21, 2007.[2] Dr. Labore wrote as follows: "As defined, I estimate it unlikely Mr. Leahy would tolerate a full-time 'light duty' position. However, this estimate is not based on a measured or observed test of his functional capacity. My estimation is based on chronic/recurrent low back and cervical spine pain, evaluated in clinic." (Tr. 755.)

**Evidentiary Hearing of April 16, 2008** (Tr. 35-54 )

Plaintiff, who was represented by counsel, testified that he was 59 years old and had completed high school and approximately one year of college. He testified that he had worked as an insulator for approximately forty years. He became the business

---

[2] The Court notes that Dr. Labore did not state on March 21, 2007, that Plaintiff could not do sedentary work; he only stated that Plaintiff could not do light work.

manager for his union in June 1998 and held that position until December 2005, leaving the position because he was scheduled to undergo knee replacement surgery that month and the procedure would make him unable to work.

Plaintiff testified that he applied for and collected unemployment payments in 2006. These payments stopped when he began receiving pension payments on about April 1, 2006. He had two pensions -- one, from the union of approximately $2,600, after taxes and health insurance; and the other of approximately $1,000.

Plaintiff testified that after the left knee replacement surgery in March 2006, he used a walker for two to three weeks and then a cane for approximately two months. He testified that his left knee was doing well, but that he was starting to have recurrent pain in his right knee, following the January surgery to that knee for meniscus tears, and that he had recently had injections to address this issue.

Plaintiff testified that, after having lower back pain for an extended time, he began in October 2007 having extreme shooting pains in his legs, hamstring, groin, and buttocks. Further, in 2007 he underwent an MRI of his neck to investigate neck pain and immobility and headaches. His right thumb remained painful after the 2007 joint replacement surgery. He had received numerous injections into this thumb, as well as his left thumb, also arthritic, and for which he was also considering surgery. Plaintiff testified that he was also experiencing pain in his left shoulder and that he had been diagnosed with partial rotator cuff tears. Plaintiff testified that standing for more than 15 to 20 minutes caused back pain that forced him to sit down. Bending and other motions

caused his back to stiffen and become painful. He testified that since October 2007, he had experienced severe leg pains in the morning and then throughout the day resulting from various physical motions.

Plaintiff testified that his work as business manager for the insulators union involved mediating contractual disputes between contractors and union workers. This required weekly visits to work sites to inspect the quality of insulating work being done, and involved physical exertion similar to that of doing the insulating work itself, including climbing on roofs, scaffolds, and ladders.

He testified that he was waiting for the results of a recent myelogram and would be seeing his surgeon in a few weeks to discuss the possibility of back surgery. The pain medication he took each day made him drowsy. He was seeing a psychologist about once a month to help him with issues of depression. He did not want to go out or associate with people because of his pain. Plaintiff clarified that he left his job as the union business manager when there was still another year left to his term.

The VE testified that a person with Plaintiff's vocational factors (age, education, and work experience), who could lift/carry up to ten pounds occasionally, could not stoop or crouch, or climb ropes, ladders, or scaffolds, and had to avoid concentrated exposure to extreme cold, hazards of heights, and vibration, could not perform Plaintiff's past work as business manager as Plaintiff testified that he performed it, but could perform the job identified in the DOT as "business manager, labor unions." The VE testified that the DOT classified this job as sedentary, which puzzled the VE because the description of the

job required visiting work sites. The VE testified that this job description in the DOT was last updated in 1977, and that Plaintiff's description at the hearing of his job duties as business manager of the union fit the VE's understanding of what such a job would entail.

**Post-Hearing Evidence**

On April 21, 2008, Dr. Bridwell recommended instrumented fusion from L2 to L5 and decompressions at L2-L3 through L4-5. (Tr. 764.) Plaintiff was later scheduled for lumbar decompression from L2-L5 and posterior spinal fusion from L2-L5. (Tr. 779-80.)

**ALJ's Decision of May 1, 2008 (Tr. 6-19)**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since December 9, 2005, and had the severe impairments of degenerative disk disease of the spine, and residuals of bilateral knee surgery. The ALJ determined that Plaintiff had the RFC to perform sedentary work[3] with limitations to only occasional lifting/carrying of ten pounds, no climbing ropes, ladders or scaffolds, no stooping or crouching, and no concentrated exposure to extreme cold, hazards of heights, and vibration.

The ALJ found that his daily activities were inconsistent with his complaints of

---

[3] Sedentary work involves lifting no more than ten pounds at a time, occasionally lifting or carrying articles like docket files, ledgers, and small tools, and occasionally walking and standing. 20 C.F.R. § 404.1567(a).

"Occasionally" would generally total no more than about two hours of an eight-hour workday. Sitting would generally total about six hours of an eight-hour workday. Social Security Ruling ("SSR") 96-9p, 1996 WL 374185, at *6-7 (July 2, 1996).

9

symptoms precluding all types of work, and that in general Plaintiff was "not fully credible." The ALJ pointed to Plaintiff's application for unemployment benefits, noting that under Missouri law, to be entitled to such benefits, an individual must certify that he is actively seeking work, and the receipt of these benefits indicated that Plaintiff was capable of working.

The ALJ found that the discrepancy between Plaintiff's description of his job activities as a union business manager on his application form, and his description at the evidentiary hearing of these activities at the hearing "poorly reflected upon his credibility." The ALJ concluded, "Clearly [Plaintiff], when he worked as business manager/representative, had the discretion to limit his work activities to the sedentary description he provided within [the application form]."

The ALJ noted that no physicians ever stated that Plaintiff was disabled or could not work, and that this detracted from the credibility of Plaintiff's subjective complaints. The ALJ stated that the VE testified that a person with Plaintiff's vocational factors and RFC could perform Plaintiff's past job as a business manager, not as Plaintiff described the job at the hearing, but as the job was customarily performed in the national economy pursuant to the DOT. The ALJ concluded that Plaintiff was not disabled.

**New Evidence Submitted to the Appeals Council and Appeals Council's Decision**

Plaintiff submitted to the Appeals Council a letter dated June 17, 2008, from John Stiffler, Business Manager, Insulators and Asbestos Workers, Local No. 1, to Plaintiff's counsel. The letter describes the job of business manager for the union, as set forth in the

union's constitution, and states that the business manager spent 40% of his time in office work, 40% on job sites, and 20% traveling, and that while on job sites the business manager had to be able to bend, twist, stoop, crouch, crawl, climb, and access areas under construction which had limited space and access. (Tr. 27-28.) The Appeals Council summarily denied Plaintiff's request for review.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court "must review the entire administrative record to 'determine whether the ALJ's findings are supported by substantial evidence on the record as a whole.'" *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "'may not reverse . . . merely because substantial evidence would support a contrary outcome.' Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted); *see also Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (explaining that the concept of substantial evidence allows for the possibility of drawing two inconsistent conclusions, and therefore, embodies a "zone of choice," within which the Commissioner may decide to grant or deny benefits without being subject to reversal by the reviewing court).

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12

11

months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a).

If the claimant does not have a severe impairment that meets the duration requirement, the claim is denied. If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If so, the claimant is not disabled. If he cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). Here, the ALJ determined at step four that Plaintiff could perform his past relevant work as a union manager as he had performed it.

**Ability to Perform Past Work**

Plaintiff argues that there was a conflict between the VE's testimony and the DOT

12

regarding the activities required by Plaintiff's past relevant work as a union manager, and that the ALJ did not reconcile this conflict, as he was required to do. In determining whether a claimant can perform his past relevant work, an ALJ must compare the limiting effects of the claimant's impairments with the demands of such work. *Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (citing *Groeper v. Sullivan*, 932 F.2d 1234, 1239 (8th Cir. 1991)); *Kirby v. Sullivan*, 923 F.2d 1323, 1327 (8th Cir. 1991). An ALJ may rely on a plaintiff's own description of his past duties in making these findings. *Zeiler*, 384 F.3d at 936; *Johnston v. Shalala*, 42 F.3d 448, 452 (8th Cir. 1994).

Here, the ALJ discredited Plaintiff's hearing testimony regarding his job activities as union business manager, and instead relied on Plaintiff's own description of these activities in his application form. This was essentially a credibility finding, which is in the ALJ's domain and not the Court's. *See, e.g., Guilliams v. Barnhart,* 393 F.3d 798, 801 (8th Cir. 2005) (explaining that a reviewing court does not re-weigh the evidence presented to the ALJ, and defers to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence). The Court notes that Plaintiff's description on the application was in conformity with the DOT's classification of the job as sedentary. As the ALJ stated, a person with Plaintiff's RFC, as found by the ALJ, could perform Plaintiff's past work, as that work was described in the application form. This finding is not dependent on testimony of a VE, which is unnecessary at step four of the sequential evaluation process. *See, e.g., Johnson* 42 F.3d at 452.

13

**ALJ's Assessment of Plaintiff's Credibility in Determining Plaintiff's RFC**

Plaintiff challenges the ALJ's reliance, in determining Plaintiff's RFC, on Plaintiff's receipt of unemployment benefits in finding that Plaintiff was not fully credible. Plaintiff further argues that the ALJ improperly failed to consider, in the credibility determination, Plaintiff's solid earnings history.

Before determining a claimant's RFC, the ALJ must evaluate the claimant's credibility with respect to the severity of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). In *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), the Eighth Circuit held that the "absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints." The ALJ must also consider observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the frequency, duration, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. *Id.*

The Court concludes that here, the ALJ did not give undue weight to Plaintiff's receipt of unemployment benefits. "Applying for unemployment benefits 'may be some evidence, though not conclusive, to negate' a claim of disability." *Johnson v. Chater*, 108 F.3d 178, 180-81 (8th Cir. 1997) (citation omitted); *see also Salts v. Sullivan*, 958 F.2d 840, 846 n.8 (8th Cir. 1992) ("[I]t is facially inconsistent for [a claimant] to accept unemployment compensation while applying for social security benefits."). Plaintiff's

14

receipt of unemployment compensation was just one of several factors the ALJ considered in denying benefits. Under *Johnson*, the ALJ did not place too much emphasis on Plaintiff's receipt of unemployment compensation. *Johnson*, 108 F.3d at 180-81.

While Plaintiff is correct that a longstanding work history is a factor that weighs in favor of a claimant's credibility, an ALJ's failure to mention work history in his credibility analysis, standing alone, does not constitute reversible error. *See Roberson v. Astrue*, 481 F.3d 1020, 1025-26 (8th Cir. 2007) ("It might have been better if the ALJ had referred specifically to [the claimant's] work record when determining her credibility . . . but we do not think that the ALJ was required to refer to every part of the record, and we think that the portions of the record that he referred to were sufficient to support his credibility determination."). Thus, the Court concludes that Plaintiff's arguments here are without merit.

**Combination of Impairments**

Plaintiff's last argument is that if the ALJ had properly considered the effect of the combination of Plaintiff's impairments, in determining the RFC, the ALJ would have found Plaintiff was limited to less-than-sedentary work. It is true that the ALJ must consider impairments in combination. 20 C.F.R. § 404.1523; *Anderson v. Heckler*, 805 F.2d 801, 805 (8th Cir. 1986). However, if the ALJ discusses all of a claimant's impairments and concludes that they do not render the claimant disabled, no further analysis is required. *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992). "To

require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Id.* (Citation omitted.) Here, the ALJ discussed all of Plaintiff's impairments, and in fact did find that Plaintiff had the RFC for less than the full range of sedentary work and still found that he was not disabled. The Court notes that this finding is implicitly supported by Dr. Labore's opinions dated March 21, 2007, and April 11, 2008, that Plaintiff could not do light work, even when asked if he thought Plaintiff could do sedentary work.

## CONCLUSION

While there is evidence to support a contrary result, the ALJ's determination is supported by substantial evidence on the record as a whole. "It is not the role of [the reviewing] court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo." *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009) (citation omitted). "'If after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the denial of benefit.'" *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 21st day of September, 2011